**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KING PHARMACEUTICALS RESEARCH | ) | |
| AND DEVELOPMENT, INC., | ) | |
| ASTELLAS US LLC and | ) | |
| ASTELLAS PHARMA US, INC., | ) | Civil Action No.  05-337 SLR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SICOR INC. and | ) | |
| SICOR PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATION**

Plaintiffs King Pharmaceuticals Research and Development, Inc., Astellas US LLC and Astellas Pharma US, Inc. (collectively, "Plaintiffs") and Defendants Sicor, Inc. and Sicor Pharmaceuticals, Inc. (collectively "Defendants"), hereby stipulate and agree, subject to the approval of the Court, that if called to testify, Mr. Mattsson, on direct examination, would testify as follows:

1.      Mr. Mattsson is an authorized European Patent Attorney.

2.      Mr. Mattsson graduated from Upsala University in Sweden with an M.SC degree in Molecular Biotechnology Engineering.

3.      Mr. Mattsson is a partner in the international law firm of Awapatent AB.

4.      Mr. Mattsson is a member of The Institute of Professional Representatives before the European Patent Office.

5.      Mr. Mattsson is a frequent lecturer at seminars and intellectual property conferences, including at Nordic IPR Forum, World Drug Discovery & Development Summit, Stockholm University, and the Swedish Academy of Pharmaceutical Sciences.

6.      Mr. Mattsson is currently a member of the International Federation of Intellectual Property Attorneys, the Swedish Association for the Protection of Industrial Property, and The Association of Swedish Patent Attorneys.

7.      Mr. Mattsson has reviewed the document marked as TX 1193 (SIC 010937-010951).  He would testify that this document contains a letter dated June 4, 1996 entitled "Observations relating to European Patent Application no. 8903960.2-2107--Medco Research Inc." and an enclosure.  He understands that the enclosure is referred to as the Karolinska Request.

8.      Mr. Mattsson also understands that the Karolinska Request is a document submitted as an enclosure to the Observations letter by Lennart Fogelberg of Allied Attorneys Chemical AB to the European Patent Office (EPO).  The Observations letter was submitted to make the EPO aware of a request to the Ethics Committee at the Karolinska Institute, dated December 28, 1987.

9.      In the Observations letter, Mr. Fogelberg states that "requests of this type [referring to the Karolinska Request] are generally available to the public in Sweden."  It is clear to Mr. Mattsson that, given that Mr. Fogelberg is addressing the EPO, that Mr. Fogelberg is referring to the European Patent Convention when he uses the phrase "available to the public."

10.     Mr. Mattsson will testify that, under the European Patent Convention, subject-matter defined by claims in a European patent application shall be considered new if it does not form part of the state of the Art.  The state of the Art shall be held to comprise everything made available to the public by means of written or oral description, by use, or in any other way, before the date of filing of the European patent application.  EPC Art. 54(1)(2).  Thus, the subject matter lacks novelty if it is described in a document that was "available to the public"

prior to the effective filing date of the European patent application.

11.    Mr. Mattsson will also testify that, under the European Patent Convention, a paper such as the Karolinska Request is available to the public if a copy may be obtained without breaching any confidentiality proscriptions.  Stated another way, a document is available to the public under the European Patent Convention if the document "would have been available to anyone who requested to see it" on a particular day.  It is not necessary that any member of the public would have been aware that the document was available on that day, whether by means of an index or otherwise, nor is it necessary for any member of the public to actually ask for the document.  *See, e.g.*, EPO Board of Appeals Decision T 381/87.

12.    Mr. Mattsson would further testify that, under the European Patent Convention, a document would be publicly available even if it were neither indexed nor catalogued in a way that a member of the public could look it up.  Accordingly, the European Patent Convention does not require that a document be sufficiently accessible to the public to raise a presumption that the public concerned with the art would know of it.

13.    Mr. Mattsson would also say that, under the European Patent Convention, a document would be publicly available even if it were catalogued by no more than a mere list of index cards filed in a shoe box by only an author's name.

14.    Finally, Mr. Mattsson would testify that, under the European Patent Convention, a document would be publicly available even if it could be located only by someone who was informed of its existence by a faculty committee, and not by means of the customary research aids available in a library.

On Cross-examination, Mr. Mattsson would testify:

1.    Mr. Mattsson attained a master's degree in engineering in 1999.  He took the

European Qualification Examination in 2003, which is the examination that one must pass in order to be able to qualify as a registered patent attorney.

2.    It is not necessary to attend a school of law in order to take the European Qualification Examination.

3.    Mr. Mattsson has never attended law school.  He worked as a patent attorney at Awapatent AB from 1999-2003.

4.    Mr. Mattsson's responsibilities as a patent attorney from 1999-2003 were to consult clients and advise them on matters relating intellectual property law, notable patents within the biotech and pharmaceutical arena.  He drafted patent applications.  He prosecuted patent applications.  He provided opinions on the validity of granted patents and the likelihood of validity of pending patent applications for clients.

5.    Under Swedish law a patent attorney is not the same as a lawyer.  A law degree is not necessary to practice as a patent attorney.  It is necessary to have a technical or scientific background.  Mr. Mattsson's technical background rather than his legal background qualified him to serve as a patent attorney.

6.    Mr. Mattsson did not need to take an examination to qualify as a patent attorney. Anyone with a technical degree can hold the position of patent attorney.

7.    Mr. Mattsson was engaged by counsel for Astellas to opine on the meaning of the phrase "available to the public" in the context of the European Patent Convention.

8.    Mr. Mattsson has never met Mr. Fogelberg.  Mr. Mattsson did not speak with Mr. Fogelberg as part of his preparation for his deposition.  Mr. Mattsson has no personal or firsthand knowledge that Mr. Fogelberg was referring to the European Patent Convention when he used the phrase "available to the public."

- 4 -

9.      Mr. Mattsson's interpretation of the phrase "available to the public" is his interpretation under the European Patent Convention.

10.      This is not a contentious matter in European Patent Convention law.  It is more or less decided.  However, it is possible that, among the thousands of European patent attorneys, another attorney experienced in interpreting the European Patent Convention could have arrived at another conclusion.

11.      Mr. Mattsson has no personal knowledge concerning the Karolinska Request other than seeing it as an attachment to the Fogelberg letter in connection with preparing his opinion in this litigation.

12.      Mr. Mattsson has no personal knowledge of the way the Karolinska Request was indexed, cataloged, or kept at the Karolinska Institute.  Mr. Mattsson has no personal knowledge that the Karolinska Request was not sufficiently accessible to the public such that the public concerned with the art would not know of it.  Mr. Mattsson has no personal knowledge or other information as to whether the Karolinska Request could only be located by someone who was informed of its existence by a faculty committee.  Nor does Mr. Mattsson have any personal knowledge or other information as to whether the Karolinska Request could not be located by the customary research aids available in the library.

13.      Mr. Mattsson does not have any personal knowledge or information that regarding whether the Karolinska Request was kept in a way that was not indexed or cataloged by title or name.

14.      Mr. Mattsson has no personal knowledge as to whether the only way a member of the public could find the Karolinska Request would be to ask for a binder in which it appeared and review such a binder page by page to find it.  He did not learn anything prior to preparing his

report or in the course of preparing his report that gave him any reason to believe that the only way a member of the public could find the Karolinska Request would be to ask for a binder in which it appeared and review such a binder page by page to find it.

15.     Mr. Mattsson did not feel that he needed any additional information, such as conversations with fact witnesses or additional documentation, to prepare his opinion. He was asked to opine on a very specific question under European Patent Convention law. In Mr. Mattsson's opinion, the case law and the interpretation provided by the EPO of the provisions of Article 54(2), as reflected in the one case cited are sufficient for him to be able to state that the Karolinska Request would have been available to the public in the sense of Article 54 of the European Patent Convention. Mr. Mattsson did not really feel that there was a lot of room for doubt.

On Re-direct examination, Mr. Mattsson will testify:

1.     In order to qualify as a European patent attorney, it is necessary to pass the European Qualifying Examination. In order to enroll in the European Qualifying Examination, one has to have a technical or scientific degree at a master's level or higher. Mr. Mattsson thinks it a bachelor's degree is also sufficient if one has an additional three or four years of practice. To be eligible to take the exam, one also must work for three years under the supervision of a qualified European patent attorney. The EQE, European Qualifying Examination, which is held once a year over the course of three days. It has four separate parts: A, B, C, and D. One has to pass all of these papers individually, although one can, for example, pass A and B one year and pass C and D the next year. One is qualified as of the time when one passes all four. The A paper is the preparation of a European patent application. The B paper is answering an office communication from the European Patent Office. Paper C is preparing a complete opposition writ or an opposition notice of opposition to the European Patent Office. Paper D is legal

- 6 -

questions. It is actually divided into two papers, D1 and D2, where the first one is short questions and the second one is analyzing and advising on a complex legal situation.

2.      Mr. Mattsson passed the European Qualifying Examination, which has four parts given over three days.

3.      Mr. Mattsson is not certain regarding the pass rate of the European Qualification Examination in Sweden 2003. The overall pass rate for everyone in Europe has never exceeded 35 percent. Mr. Mattsson thinks that it was around 33 percent that year. There is a document published from the EPO every year with the statistics of the exam where one can see the breakdown percentage of first sitters, resitters, from all the contracting states of the European patent Convention. Those are figures that could easily be made available. His testimony with respect to the pass rate percentages is his recollection of the actual percentages that were published by the EPO.

**SO STIPULATED:**


  /s/ Richard K. Herrmann                                /s/ Karen E. Keller
Richard K. Herrmann #405                      Josy W. Ingersoll #1088
Mary B. Matterer # 2696                         John W. Shaw #3362
MORRIS JAMES LLP                                 Karen E. Keller #4489
500 Delaware Avenue, Suite 1500          YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, DE 19801-1494                    The Brandywine Building
(302) 888-6800                                        1000 West Street
rherrmann@morrisjames.com                   Wilmington, DE  19801
mmatterer@morrisjames.com                    (302) 571-6672
*Attorneys for Plaintiffs*                         jingersoll@ycst.com
*Astellas US LLC and*                             jshaw@ycst.com
*Astellas Pharma US, Inc.*                      kkeller@ycst.com
                                                            *Attorneys for Defendants Sicor Inc. and*
                                                              *Sicor Pharmaceuticals, Inc.*

_/s/ Paul E. Crawford_

Paul E. Crawford #493
Patricia Smink Rogowski # 2632
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141
pcrawford@cblh.com
progowski@cblh.com
_Attorneys for Plaintiff_
_King Pharmaceuticals Research_
_and Development, Inc._

Dated:  February 9, 2007